At a Court of Oyer and Terminer held at this term, John Brister, a negro boy about fifteen years old, was indicted and tried for the crime of arson in setting on fire the dwelling house of James Davis, in St. George's hundred. He had been sent by his master, James Williams, to whom he was indentured as a servant, to Mr. Davis to work for him on his farm, who had whipped him for not working as he should, for which he ran away a few days afterwards and on the Saturday night following about 10 o'clock he went over to his mother's house to look for him, without finding him, but on his return about one hour afterwards, found his house on fire and nearly burnt down, and the prisoner there sitting on a log looking at it which had then just fallen in, and also a good many of his neighbors there who had collected at the fire. He further testified that *Page 151 
the prisoner staid there all that night, and did not try to leave, so far as he knew, but he told him not to go away, for he suspected him of having set it on fire, which, however, he denied, as well as to others present who also charged him with it; and that by his orders he went into the smoke house and staid in it all that night. The next morning he had him formally arrested for it and taken before a Justice of the Peace at Middletown.
Thomas R. Hayes testified that the prisoner worked for him the Friday and Saturday before the house was burnt down on the night of the latter day. He had driven from home that day and returning in the evening, he told him to take his horse and carriage and turn him out, but that he was gone so long he became concerned about him, and went to look for him, without at first finding him, but went again about 9 o'clock into an out field, after Mr. Davis' house had been set on fire, where he saw him and called to him, when he dropped the bridle which he had taken from his horse, and ran off in the direction of Mr. Davis'.
The Justice of the Peace testified that on the hearing before him the prisoner made a statement in regard to the matter of the offense charged against him, and that his impression was that he took some notes in writing of what he said, but he could not say positively, nor could he say whether he filed any confession in writing made by the prisoner before him, or that the prisoner signed any confession of the offense reduced to writing by or before him. He was then asked the general question what the prisoner then said in regard to the burning of the house.
The Court. The provisions of the statute of George the Fourth are different from those of our statute, and the rulings of our Courts have not been so rigid as those of England on the point presented in the objection. For our statute requires not only that the confession shall be reduced to writing by the Magistrate, but that he shall read it as thus reduced to writing to the accused, and tender it to him for his approval and signature; and yet our Courts have uniformly held that unless it satisfactorily appears to the Court that this has been done, and furthermore that the prisoner approved and signed it, parol evidence of the confession is admissible.
The witness then stated that he said he went over to Mr. Davis' house that night and sat down on an old and dry chestnut fence post, one end of which was under the house, and took a match out of his pocket to light a segar, and which he struck on the log and dropped on it after lighting the segar, and looking around soon afterwards he found it had set fire to some loose dry bark inside of the log and run under the house and set fire to it.
Another witness (Wm. Giles) testified that he observed the fire about 10 o'clock that night and ran over to Mr. Davis', and when he reached the house Benjamin Armstrong and the prisoner were there, and were trying to put the fire out. They were on the top of a shed covered with straw apparently made for cattle near to, but not attached to the dwelling house, which was then on fire and burning freely. The prisoner was about there all that night, and *Page 153 
he told him several times during the night that he must have set fire to it. He however said he did not, but the next morning after Mr. Hayes had whipped him, he asked him if he did not set fire to the house, to which he replied that he did — that he took out a match to light on a log that run under the house, and lighting it on the log it blazed right up and set fire to the house.
Gray asked the Court to instruct the jury on the evidence before them of the severe whipping which the prisoner had received that morning from Mr. Hayes, of his being dragged soon after with his hands tied behind a horse and carriage two miles to Middletown before the Magistrate, his age, color and condition in life, his ignorance and inexperience, and the improper manner in which it appeared the examination of him in regard to the accusation had been conducted by that officer, assuming his guilt as a foregone conclusion, and without any admonition or intimation whatever given him as to the rights and privileges secured to him under the circumstances, and under the charge too, for a capital offense, and dictated by a cardinal and humane precept of the law itself — even commencing it at the very outset with the abrupt enquiry, why he set fire to Mr. Davis' house, and the most of which had only been made to appear on the cross examination of the Magistrate, that it was not such a free and voluntary confession as was justly entitled to any credit or consideration, or even to admission in evidence before the jury. 1Greenl. Ev. Secs. 219, 216. Rex v. Wilson,
3 Eng. C. L. R. 192. Amer. Cr. Law 319. 2 Russ. on Crimes, 648.
McCaulley, Deputy attorney General. There were no improper means employed to induce the confession. There were no threats or promises made, or hope or idea of any benefit or advantage suggested to induce the prisoner to make it, and therefore there could be no ground for impeaching the force and validity or disputing the admissibility of it. *Page 154 
that a parol or verbal confession of guilt on an accusation of a felonious offense when uncorroborated by any other evidence, should always be received with scrutiny and caution, but a free, deliberate and voluntary confession when proved to the satisfaction of the jury, is entitled to great weight in determining the question as to the guilt of the accused. In this case the Court declined to rule out the parol testimony of the Magistrate in relation to the admissions made by the prisoner on his examination before him and those made also before another witness, because the rulings of the Courts of this State on that point appeared to us to require that they should be admitted. But that decision was simply on the legal question as to the admissibility of parol evidence under the circumstances disclosed of the prisoner's alleged confession or admissions; for if the jury should believe from all the evidence before them that they were not freely and voluntarily made, or were not true in point of fact, or were made under fear or apprehension of further corporal punishment and chastisement, or under the hope and belief that it would be better for him to admit the charge than to deny it, but that he did not in fact commit the crime, then they would not be bound to credit his statement and admissions, but should discard them entirely from their consideration in making up their verdict in the case. The crime with which he stands charged is arson, which is not only a felony, but a capital felony under our statute; and inasmuch as it is by the common law and by the law of this State, a well settled principle of criminal pleading that whenever a criminal offense of the grade of felony is charged in an indictment, it must be alleged among other averments that the offense was committed feloniously, and yet we are bound to say to you in this case that this allegation we find is wanting in this indictment, and for that reason we are further bound to say to you that you ought to acquit the prisoner.
 Verdict — Not guilty. *Page 155